# Third District Court of Appeal

## State of Florida

Opinion filed September 20, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-915
Lower Tribunal No. 20-9599
_____


**Scott Walls,**
Appellant,

vs.

**Roadway, Inc., etc.,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Liebler, Gonzalez & Portuondo, and Tricia J. Duthiers and James R. Liebler, II, for appellant.

BenitezLaw, and Lizette P. Benitez, for appellee.


Before EMAS, SCALES and GORDO, JJ.

EMAS, J.

**INTRODUCTION**

Appellant, Scott Walls, seeks review of the trial court's final summary judgment in favor of appellee, Roadway, Inc. on Walls' claims against Roadway related to the towing, storage and sale of his vehicle. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings on two counts of the complaint.

**FACTS AND PROCEDURAL HISTORY**

Scott Walls, the plaintiff below, alleges that in April 2018 he purchased a 2011 Audi R8 Spyder Convertible from Cosmo Motors, Inc., a dealer in North Carolina, for $95,570.50. He never obtained a certificate of title for the vehicle, nor did he register the vehicle in the State of Florida, where he lived. Two years later, in March 2020, the City of Miami contacted Roadway, a towing company, and directed it to tow the Audi, as it was illegally parked in a public parking lot. The vehicle had only a North Carolina temporary tag that expired in 2018. Roadway towed the vehicle to its impound lot and began the process of foreclosing its lien pursuant to section 713.78, Florida Statutes (2020). Walls appeared at Roadway several times, attempting to pay for the tow charges and recover possession of the vehicle, but because he was unable to present a certificate of title, Roadway refused to release the vehicle.

2

In the meantime, Roadway conducted a search of the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") records, which revealed that the registered owner of the vehicle was Peter A. Petito, that it was insured by Privilege Underwriters Reciprocal Exchange and that JP Morgan Chase Bank, NA had a lien interest in the vehicle. Roadway sent notice to all three. In addition, Roadway searched the National Motor Vehicle Title Information System ("NMVTIS"), which also identified Peter A. Petito as the registered owner of the vehicle. Roadway also provided public notice of the lien sale by publication in the Community Newspapers.

On April 23, 2020, Roadway held an auction and since no one appeared at the lien sale or made a bid, sold the vehicle to itself for the amount of accrued towing and storage charges. Thereafter, DHSMV issued title to the Audi to Roadway.

Walls sued Roadway and, in his first amended complaint, asserted three counts relevant to this appeal: violation of section 713.78, Florida Statutes (2020) (relating to the sale of impounded/towed vehicles) (Count II); civil theft (Count III); and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count IV).

Both parties moved for summary judgment. Importantly, although Walls sought summary judgment on Counts II, III, and IV, Roadway wholly

3

failed to address Counts III and IV (either in its own summary judgment motion or in response to Walls' cross-motion), except to assert it was "entitled to summary judgment on [Walls'] claims as a matter of law."

Following a hearing on the competing motions, the trial court granted Roadway's motion for summary judgment, finding (1) "Roadway fully complied with the requirements of Florida Statute section 713.78;" (2) "Roadway is the owner of the Vehicle as evidenced by the Certificate of Title duly issued by the Florida DHSMV;" and (3) "There is no genuine dispute as to any material fact and Roadway is entitled to judgment as a matter of law." The trial court's order does not specifically address Count III (civil theft) or Count IV (FDUTPA violations). Nevertheless, the trial court entered final judgment in favor of Roadway on all three counts[1] and stated that Walls "shall take nothing by this action and Roadway may go hence without day."

**<u>STANDARD OF REVIEW</u>**

The standard of review for issues of statutory interpretation is de novo. <u>Lab. Corp. of Am. v. Davis</u>, 339 So. 3d 318 (Fla. 2022). We generally review a final order of summary judgment de novo. <u>Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126 (Fla. 2000).

---

[1] Count I of the complaint was for a pre-judgment petition for an order directing and administrative hold of title pending adjudication, which was granted by the court and is not at issue in this appeal.

4

**ANALYSIS AND DISCUSSION**

**Count II- Section 713.78, Florida Statutes**

Section 713.78 provides, in pertinent part:

(2) Whenever a person regularly engaged in the business of transporting vehicles or vessels by wrecker, tow truck, or car carrier recovers, removes, or stores a vehicle or vessel upon instructions from

. . .

(b) the owner or lessor, or a person authorized by the owner or lessor, of property on which such vehicle or vessel is wrongfully parked. . . [which, in this case, includes the City of Miami] **she or he shall have a lien on the vehicle** or vessel for a reasonable towing fee, for a reasonable administrative fee or charge imposed by a county or municipality, and for a reasonable storage fee . . . .

. . .

(4)(a) A person regularly engaged in the business of recovering, towing, or storing vehicles or vessels who comes into possession of a vehicle or vessel pursuant to subsection (2), and who claims a lien for recovery, towing, or storage services, **shall give notice, by certified mail, to the registered owner, the insurance company insuring the vehicle notwithstanding s. 627.736, and all persons claiming a lien thereon, as disclosed by the records in the Department of Highway Safety and Motor Vehicles or as disclosed by the records of any corresponding agency in any other state in which the vehicle is identified through a records check of the National Motor Vehicle Title Information System or an equivalent commercially available system as being titled or registered.**

. . .

(c)The notice of lien must be sent by certified mail to the registered owner, the insurance company insuring the vehicle . .

5

. and all other person claiming a lien thereon within 7 business days. . . .

. . .

(e) **If attempts to locate the name and address of the owner or lienholder prove unsuccessful**, the towing-storage operator shall, after 7 business days, excluding Saturday and Sunday, after the initial tow or storage, notify the public agency of jurisdiction where the vehicle or vessel is stored in writing by certified mail or acknowledged hand delivery that the towing-storage company has been unable to locate the name and address of the owner or lienholder and a physical search of the vehicle or vessel has disclosed no ownership information and a good faith effort has been made, including records checks of the Department of Highway Safety and Motor Vehicles database and the National Motor Vehicle Title Information System or an equivalent commercially available system. For purposes of this paragraph and subsection (9), the term "good faith effort" means that the following checks have been performed by the company to establish the prior state of registration and for title:

1. A check of the department's database for the owner and any lienholder.
2. A check of the electronic National Motor Vehicle Title Information System or an equivalent commercially available system to determine the state of registration when there is not a current registration record for the vehicle or vessel on file with the department.
3. A check of the vehicle or vessel for any type of tag, tag record, temporary tag, or regular tag.
4. A check of the law enforcement report for a tag number or other information identifying the vehicle or vessel, if the vehicle or vessel was towed at the request of a law enforcement officer.
5. A check of the trip sheet or tow ticket of the tow truck operator to determine whether a tag was on the vehicle or vessel at the beginning of the tow, if a private tow.
6. If there is no address of the owner on the impound report, a check of the law enforcement report to determine whether an out-of-state address is indicated from driver license information.

7. A check of the vehicle or vessel for an inspection sticker or other stickers and decals that may indicate a state of possible registration.

8. A check of the interior of the vehicle or vessel for any papers that may be in the glove box, trunk, or other areas for a state of registration.

9. A check of the vehicle for a vehicle identification number.

. . .

(6) A vehicle or vessel that is stored pursuant to subsection (2) and remains unclaimed, or for which reasonable charges for recovery, towing, or storing remain unpaid, and any contents not released pursuant to subsection (10), **may be sold by the owner or operator of the storage space for such towing or storage charge** 35 days after the vehicle or vessel is stored by the lienor if the vehicle or vessel is more than 3 years of age or 50 days after the vehicle or vessel is stored by the lienor if the vehicle or vessel is 3 years of age or less. The sale shall be at public sale for cash. If the date of the sale was not included in the notice required in subsection (4), notice of the sale shall be given to the person in whose name the vehicle or vessel is registered and to all persons claiming a lien on the vehicle or vessel as shown on the records of the Department of Highway Safety and Motor Vehicles or of any corresponding agency in any other state in which the vehicle is identified through a records check of the National Motor Vehicle Title Information System or an equivalent commercially available system as being titled. Notice of the sale must be sent by certified mail. The notice must have clearly identified and printed, if the claim of lien is for a motor vehicle, the last 8 digits of the vehicle identification number of the motor vehicle subject to the lien, or, if the claim of lien is for a vessel, the hull identification number of the vessel subject to the lien, in the delivery address box and on the outside of the envelope sent to the registered owner and all other persons claiming an interest therein or lien thereon. The notice must be sent to the owner of the vehicle or vessel and the person having the recorded lien on the vehicle or vessel at the address shown on the records of the registering agency at least 30 days before the sale of the vehicle or vessel. The notice must state the name, physical address, and telephone number of the lienor, and the

7

vehicle identification number if the claim of lien is for a vehicle or the hull identification number if the claim of lien is for a vessel, all of which must also appear in the return address section on the outside of the envelope containing the notice of sale. After diligent search and inquiry, if the name and address of the registered owner or the owner of the recorded lien cannot be ascertained, the requirements of notice by mail may be dispensed with. In addition to the notice by mail, public notice of the time and place of sale shall be made by publishing a notice thereof one time, at least 10 days before the date of the sale, in a newspaper of general circulation in the county in which the sale is to be held. **The proceeds of the sale, after payment of reasonable towing and storage charges, and costs of the sale, in that order of priority, shall be deposited with the clerk of the circuit court for the county** if the owner or lienholder is absent, and the clerk shall hold such proceeds subject to the claim of the owner or lienholder legally entitled thereto. The clerk shall be entitled to receive 5 percent of such proceeds for the care and disbursement thereof. **The certificate of title issued under this law shall be discharged of all liens unless otherwise provided by court order**. The owner or lienholder may file a complaint after the vehicle or vessel has been sold in the county court of the county in which it is stored. Upon determining the respective rights of the parties, the court may award damages, attorney fees, and costs in favor of the prevailing party. (Emphasis added).

A plain reading of the statute establishes that Roadway was obligated to send notice only to the "registered owner, the insurance company insuring the vehicle. . . and all persons claiming a lien" on the vehicle, "as disclosed by the records in the Department of Highway Safety and Motor Vehicles or as disclosed by the records of any corresponding agency in any other state in which the vehicle is identified through a records check of the National

8

Motor Vehicle Title Information System or an equivalent commercially available system as being titled or registered." § 713.78(4)(a). It is undisputed that the only registered owner disclosed by DHSMV and NMVTIS was Peter A. Petito, and nothing in those searches revealed the identity of Walls as an owner or potential owner. There is also no genuine issue of disputed fact that Roadway timely notified those parties prior to the sale.

In the trial court below, and in this appeal, however, Walls asserts that because he appeared at Roadway with documentation to establish he was the owner, Roadway had a duty to make good faith efforts to comply with the statute's notice requirements and that its failure to investigate why the vehicle had a temporary tag from North Carolina was not a good faith effort.

We do not agree. The statute plainly and unambiguously sets forth the duties imposed upon the tow company, and there is no dispute that Roadway complied with those statutory obligations. The statute simply did not require Roadway to conduct further research or investigation regarding the expired temporary tag or to accept Walls' documents, none of which included an actual certificate of title.[2] "It is a basic principle of statutory construction that

_____

[2] We note, parenthetically, that Walls failed to avail himself of the statutory remedy provided by section 713.78(5)(a):

> The owner of a vehicle or vessel removed pursuant to subsection (2). . . within 10 days after the time she or he has knowledge of

courts 'are not at liberty to add words to statutes that were not placed there by the Legislature.'" Seagrave v. State, 802 So. 2d 281, 287 (Fla. 2001) (quoting Hayes v. State, 750 So. 2d 1, 4 (Fla. 1999)). If the legislature "did not intend the results mandated by the statute's plain language, then the appropriate remedy is for it to amend the statute." Whitney Bank v. Grant, 223 So. 3d 476, 479 (Fla. 1st DCA 2017). See also Overstreet v. State, 629 So. 2d 125, 126 (Fla. 1993) ("We decline to add words to a statute where, as in this case, the language is clear and unambiguous. 'It is a settled rule of statutory construction that unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language.'") (quoting State v. Jett, 626 So. 2d 691, 693 (Fla. 1993)).

### Counts III and IV: Civil Theft/FDUTPA Claims

Although we find the trial court properly entered final summary judgment in favor of Roadway on Count II (section 713.78), we hold it was error for the trial court to enter final summary judgment in favor of Roadway on all counts of the operative complaint without even addressing Count III (Civil Theft) and Count IV (FDUTPA). The four-page final summary judgment

---

the location of the vehicle or vessel, may file a complaint in the county court of the county in which the vehicle or vessel is stored to determine whether her or his property was wrongfully taken or withheld.

10

relates only to section 713.78, and makes no reference to Walls' additional claims of civil theft and FDUTPA violations. Indeed, a person reading the order would have no way of discerning that Walls made any claim in his complaint other than one for a violation of section 713.78.

Florida Rule of Civil Procedure 1.510 was substantially amended in 2021, and applies to the order on appeal, which was rendered in 2022. Although the amended rule borrowed heavily from its federal counterpart (Rule 56) it differs in at least one relevant respect: rule 1.510(a) mandates that the trial court "**shall** state on the record the reasons for granting or denying the motion." (Emphasis added.)

In its opinion amending rule 1.510, the Florida Supreme Court emphasized this requirement:

> Where federal rule 56(a) says that the court *should* state on the record its reasons for granting or denying a summary judgment motion, new rule 1.510(a) says that the court *shall* do so. The wording of the new rule makes clear that the court's obligation in this regard is mandatory.

> To comply with this requirement, it will not be enough for the court to make a conclusory statement that there is or is not a genuine dispute as to a material fact. The court must state the reasons for its decision with enough specificity to provide useful guidance to the parties and, if necessary, to allow for appellate review. On a systemic level, we agree with the commenters who said that this requirement is critical to ensuring that Florida courts embrace the federal summary judgment standard in practice and not just on paper.

In re Amends. to Fla. R. Civ. P. 1.510, 317 So. 3d 72, 77 (Fla. 2021).[3]

On appeal, Roadway urges us to affirm on an alternative basis, asserting that, as a matter of law, Walls cannot prevail on these claims because he never obtained a certificate of title for the vehicle and thus, under section 319.22, Florida Statutes, he has no standing to pursue those claims. We do not reach the merits of this argument, and reject Roadway's attempt to raise it on appeal, as it was not raised in its summary judgment motion in the trial court.  As we observed in Sousa v. Zuni Transp., Inc., 286 So. 3d 820, 822-23 (Fla. 3d DCA 2019):

> Even if the record on appeal were to support an affirmance on these alternative grounds—an issue about which we express no opinion—it is well-settled that "[t]he [t]ipsy [c]oachman doctrine does not apply to grounds not raised in a motion for summary judgment ...." Mitchell v. Higgs, 61 So. 3d 1152, 1155 n.3 (Fla. 3d DCA 2011); see also Agudo, Pineiro & Kates, P.A. v. Harbert Const. Co., 476 So. 2d 1311, 1315 n.3 (Fla. 3d DCA 1985) (finding the rule inapplicable "in summary judgment proceedings where the issue was never raised in the motion for summary

---

[3]We note that subsequent to the filing of this appeal, the Florida Supreme Court amended Florida Rule of Civil Procedure 1.530 to require an appellant to raise the issue of a trial court's failure to make required findings below in order to preserve the issue for appeal. See In re: Amendments to Fla. Rule of Civil Procedure 1.530 and Fla. Family Law Rule of Procedure 12.530, 346 So. 3d 1161 (Fla. 2022) and In re: Amendments to Fla. Rule of Civil Procedure 1.530 and Fla. Family Law Rule of Procedure 12.530, 48 Fla. L. Weekly S69 (Fla. 2023). These amendments are not retroactive, and thus, do not apply to this appeal. See Cerniglia v. Cerniglia, 679 So. 2d 1160 (Fla. 1996) (holding amendments to rules of procedure do not apply retroactively unless specifically provided). Nevertheless, litigants should be mindful of this preservation requirement for future appeals.

12

judgment" (citations omitted)). The legal issues proposed as alternative grounds for affirmance were raised for the first time on appeal. They were not briefed in the motion for summary judgment before the trial court, were not argued at the summary judgment hearing and did not form the basis for the trial court's ruling.

**<u>CONCLUSION</u>**

For the reasons expressed, we affirm that portion of the trial court's order of final summary judgment in favor of Roadway as to Count II of the operative complaint, but reverse that portion of the trial court's order of final summary judgment in favor of Roadway as to Counts III and IV. We remand for further proceedings consistent with this opinion.